FRANKLIN B. SEIDEL et al.

*v.*

ROBERT D. MILLS et al.

[Decided September 19th, 1914.]

1. In a suit to enjoin the erection of more than one house on two lots of land adjacent to each other, upon the theory that a large tract of land embracing the lots of the complainants and defendants was originally laid out and mapped, and a "neighborhood settlement" for the benefit of all future lot owners was established, according to which a scheme of restrictions was created, and that all future owners of these lots have the benefit of this general scheme, evidence *Held* to fail to show any existing scheme or "neighborhood settlement" which establishes any right in the owner of the complainant's house and lot, to prevent by injunction the erection of separate residences on the two lots belonging to the defendants.

2. The idea that after a deed has been made, the grantee can through a course of years get the benefit of restrictions which the grantee sees fit to insert in subsequent conveyances, is novel and untenable.

———

Suit to enjoin the erection of more than one house on two lots of land adjacent to each other, each lot being twenty-five by one hundred feet.

Heard on bill, answer, replication and proofs taken in open court.

*Mr. John I. Weller,* for the complainants.

*Mr. Percy A. Gordon* and *Mr. J. W. Rufus Besson,* for the defendants.

STEVENSON, V. C.

The complainant owns and resides in a two-family house erected upon a plot thirty-three feet and four inches wide by one hundred feet deep. The defendant Robert D. Mills was threatening to erect two separate houses on his adjacent two lots, one

of which later was conveyed to the defendant Pauline R. Hovey. The theory of the bill is, that a large tract of land embracing the lots of the complainants and defendants was originally laid out and mapped, and a "neighborhood settlement" for the benefit of all future lot-owners was established according to which a scheme of restrictions was created, and that all future owners of these lots have the benefit of this general scheme. The principles which have been laid down in many cases, of which in this state, *DeGray* v. *Monmouth Beach Club House Co., 50 N. J. Eq. 329,* is the leader, supply the theory of the complainants' case.

I am entirely unable to discover any existing scheme or neighborhood settlement which establishes any right in the owner of the complainants' house and lot, to prevent by injunction the erection of separate residences on the two lots belonging to the defendants. The result is that the complainants' bill must be dismissed.

The following are the main considerations which lead to the result above stated:

The whole tract, known as Eldorado, was used as an amusement park until about 1894. Upon a foreclosure of mortgages a master in chancery caused the tract to be laid out in streets and lots, two hundred and seventeen in number. The lots are uniformly twenty-five feet wide, and except where the lines of the tract required them to be longer or shorter, they are uniformly one hundred feet in depth. The map is filed in the Hudson county register's office, and lots were sold at auction according to the map. No restrictions as to buildings were made in the master's deed or were indicated on the map.

In 1895 about half a dozen persons who had purchased the majority of the lots, constituting a large tract, filed a map modifying the master's map, widening some streets and making some other changes, but leaving the tract still divided into lots twenty-five feet in width, and making no suggestion of any restriction in respect of buildings. These joint owners, from 1895 to 1900, made twenty-two deeds, of which fifteen were made to individuals, who, presumably, in many instances, at least, bought with the intention of building. One of these deeds conveys five lots; three deeds convey three lots each; and eight deeds convey pairs

of lots, and three deeds convey single lots twenty-five feet by one hundred. The most of these deeds contain elaborate restrictions, including some form of restriction in regard to the number of buildings to be erected upon the land conveyed. The form of covenant used with certain variations is set forth in the case of *Walker* v. *Renner, 60 N. J. Eq. 493,* in which case the court of errors and appeals construed the covenant as it appeared in that case so as to leave the owner of a pair of lots free to erect a separate residence on each.

No general scheme to prohibit the erection of residences on separate lots can possibly be discovered from an examination of these deeds of the joint owners, if, indeed, under the circumstances of this case, a general scheme could be created in that way.

In the three instances in which single lots were conveyed, the restriction prevented the erection of more than one residence. Where the five lots were conveyed the restriction was that the lots were not to be subdivided "and that no more than one residence is to be erected upon the same."

On May 1st, 1900, the joint owners made seven deeds conveying different parcels of this tract to the Eldorado Realty Company. One parcel containing over a dozen lots was conveyed by one of these deeds with no restrictions whatever. Seventeen lots were conveyed by another deed with restrictions against nuisances only. Twenty or thirty lots, including gores, were conveyed without any restriction whatever. By two separate deeds, what is evidently the most valuable and desirable portion of the property for residences, was conveyed and the restrictions as to buildings are very different, and this difference constitutes a very important fact in this case. In one of these two deeds conveying a large number of lots, including the lot and a third of the complainants, and the two lots of the defendants, and many adjacent lots, the restriction was that "no more than one residence is to be erected upon one lot."

In the other of the two deeds above mentioned conveying a large number of lots, the restriction is that "none of the single lots hereby conveyed is to be subdivided, and that no more than one residence is to be erected upon any two lots."

If, under the circumstances, these seven deeds could have the effect to create a general "scheme" with respect to the erection of residences for the benefit of all further grantees, about which matter I express no opinion, it would seem that the plan or scheme was that the Eldorado company should hold the less desirable lots free from any restriction as to buildings, and that the remainder of the lots should be divided into two classes for one of which the restriction should be that no more than one residence should be erected upon any one lot twenty-five by one hundred feet, and for the other, the restriction should be that the lots should go in pairs, and that no more than one residence should be erected upon any two lots.          .

The important fact is that the complainants' lot and a third, and the defendants' two lots, are both subject to this original suggested scheme imposing the restriction that no more than one residence should be erected upon one lot twenty-five by one hundred.

The Eldorado company began in the year 1900 making conveyances of the lots which they had acquired from the joint owners. A brief abstract of over fifty of these deeds has been put in evidence exhibiting the restrictions inserted therein with respect to buildings. These restrictions vary widely. If we may assume that by the seven deeds to the Eldorado Realty Company a scheme was established for having some lots unrestricted and others restricted by the rule one building to one lot, and still others restricted by the other rule, one building to two lots, it is perfectly plain that the Eldorado Realty Company disregarded this scheme in many instances. The deeds from the company indicate that while the company may have generally followed the two rules of restriction indicated by the two deeds above mentioned, it did not hesitate to depart from those rules whenever it saw fit.

On July 14th, 1903, the company conveyed one lot and a half of the adjacent lot to one Butz, imposing the restriction in the deed that "the lots conveyed are not to be subdivided and that no more than one residence is to be erected upon the said two lots." Lot 59, one-half of which Butz acquired, was conveyed to the Eldorado company by the deed above mentioned, which imposed

the restriction of one residence to two lots, and lot 60, the whole of which Butz acquired, was conveyed by the deed which imposed the restriction of one residence to one lot.

By another deed also dated July 4th, 1903, the Eldorado company conveyed to Butz lot 58 and half of lot 59 which were included in the deed restricting one residence to two lots, and inserted in the conveyance the restriction, "that the plot hereby conveyed is not to be subdivided, and that no more than one residence is to be erected upon the same."

By deed dated December 10th, 1903, the Eldorado company conveyed four lots to Samuel Mitchel, all of which were under the restriction of one residence to two lots in the deed of the joint owners to the company, and the provision was inserted in the conveyance to Mitchel that "no more than one residence is to be erected upon less than one lot and a half."

By deed dated July 4th, 1903, the company conveyed four lots to Cora Schneider, all of which were under the rule of one residence to one lot as laid down in the deed to the company, but the restriction inserted in this conveyance to Cora Schneider was that "no more than three residences are to be erected upon the same." These four lots were reconveyed and came to the hands of three parties, each owning a lot and a third, and upon each of these plots, thirty-three and one-third feet by one hundred, dwellings have been erected. The complainant's property is one of these parcels, and upon the parcel thirty-three and one-half by one hundred furthest from the complainant, the proprietor has erected what practically amounts to two residences having a party wall.

One of the conveyances of the joint owners was before the court of errors and appeals in the case of *Walker* v. *Renner, supra*.

By deed dated October 2d, 1905, the Eldorado company conveyed to one Van Zile a lot and a half which were under the rule one house to one lot, and imposed the restriction that the "plot" thereby conveyed should not be subdivided, and "that no more than one residence is to be erected upon the same."

I understand that in several instances the form of covenant was used which was construed in the case of *Walker* v. *Renner,*

under which the purchaser was free to erect a separate residence on each lot of twenty-five by one hundred feet. The complainants insist that after that decision was rendered the form of covenant was slightly changed so as to be without ambiguity. *Walker* v. *Renner* was decided in June, 1900, and the conveyances which I have referred to, and others, show that the original scheme indicated by the deeds to the Eldorado company above mentioned was not consistently followed.

The crux of this case can only be discovered by considering the dates of the conveyances under which these litigating parties now hold. The first conveyance made by the Eldorado company is the foundation of the complainant's title, being the deed above mentioned to Cora Schneider, dated July 4th, 1903. This deed, as we have seen, departed from the supposed scheme by initiating the division of four lots into three parcels, upon each of which only one residence might be erected, although all four lots were under the restriction in the deed to the Eldorado company, which allowed one residence on each lot twenty-five by one hundred feet.

If the land of the complainant has attached to it an equitable right with respect to the number of residences which can be erected upon the defendant's lots, that right was in existence when the deed from the Eldorado Realty Company to Cora Schneider was made. At that time, however, July 4th, 1903, the defendants' lots were still vested in the Eldorado company, and the only intimation of any "scheme" or plan embracing those lots and relating to the erection of residences upon them, was found in the deed to the company of May 1st, 1900, which subjected all the lots of the complainant and the defendants to the restriction of one residence for one lot of twenty-five by one hundred feet.

The defendant's title is based upon a deed from the Eldorado Realty Company to one Joseph C. Blanch, dated July 1st, 1904. The construction of the covenant in regard to the erection of buildings upon the land is not determined by the decision of the court of errors and appeals in the case of *Walker* v. *Renner*. The deed describes the land as two separate lots, but the "s" was not filled in after the word "lot" in the restrictive covenant, so that

the same reads: "The lot hereby conveyed is 'not to be subdivided and that no more than one residence is to be erected upon the same." I do not, however, deem it necessary to enter upon the question debated by counsel as to the construction of this covenant in the light of the decision of the court of errors and appeals in *Walker* v. *Renner*. Nor does it seem to me to be necessary to determine whether or not there is so much doubt about the true construction as to forbid any injunctive action on the part of this court, in accordance with a well-settled rule. The case, it seems to me, is controlled by the proposition that even though, as between the Eldorado Realty Company and the defendants, the wider restriction was imposed upon the defendants' property than that which was imposed by the deed to the Eldorado company, such wider restriction could not operate for the benefit of the complainant, who was a stranger, whose title had been severed the year before from the tract of the Eldorado Realty Company. At most, this restrictive covenant in the deed to Blanch could avail for the benefit of the grantor's remaining property, and might be a part of a new "scheme" in relation to the erection of buildings on the defendant's two lots and other property of the grantor. Although the grantor, the Eldorado company, probably appears from an examination of all its fifty deeds or more to have intended to widen the scope of the one-house two-lot restriction, by imposing the same restriction upon lots which were under the one-house one-lot restriction, there is nothing about this case which shows that such wider scheme was an actual fact and was imposed upon the defendant's lots in the hands of the Eldorado Realty Company when that company made its deed, including the complainant's lot to Cora Schneider. The whole case of the complainant, in my judgment, breaks down at this point.

It must not be understood that I concede that there ever was any scheme or "neighborhood settlement" which enables the complainant in this case to obtain an injunction restricting the defendant in respect to the erection of buildings on his lands.

If there ever was any scheme, which helps out the complainant's case under the principles laid down in *DeGray* v. *Monmouth Beach Club House,* it seems to me quite plain that such

scheme permitted the Eldorado company, after it had made its conveyance to Cora Schneider which involved the complainant's land, to convey its remaining lots with very different restrictions as to buildings, provided the restrictive rule dividing its lots into two classes imposed by the two deeds to it of the joint owners should not be infringed. Of course, I am assuming, without admitting, that these two deeds to the Eldorado company, if the scheme therein indicated had been strictly adhered to, would have brought the complainant's case within the rule of the *De-Gray Case*. The complainant's argument would have more plausibility if it appeared that the company, having acquired these two classes of lots under these two different restrictions, had proceeded consistently by its deeds to impose the one-house two-lots rule upon all the lots which it conveyed and which in the deed to it were under the one-house one-lot rule. The Eldorado Realty Company, as we have seen, undertook to make a third class of restricted lots under a third and radically different rule, according to which three houses were allowed to be erected upon four lots. No reason can be suggested why the Eldorado company might not have proceeded to sell lots belonging to both of the original two classes in fours, restricting the use of each plot of four lots to a single residence. Such restrictive covenants, presumably, would be for the benefit of the Eldorado Realty Company, and the lands which it held at the time the covenant was made. When the complainant's predecessor in title, Cora Schneider, acquired her title, she submitted to a new restriction and had notice from the record, if she saw fit to make the inquiry, that the lots now owned by the defendant were then owned by the Eldorado Realty Company, and, at most, so far as she was concerned, were only restricted by the one-house one-lot rule, and she had no promise or intimation of any kind that for its own purposes the Eldorado Realty Company in the following year would undertake in a conveyance of the defendants' lots, to put them out of the class under the one-house one-lot rule, and into the class under the one-house two-lot rule. The idea that after a deed has been made the grantee can, through a course of years, get the benefit of restrictions which the grantor sees fit to insert in subsequent conveyances, is novel and quite untenable.

The difficulties in the way of the complainants in this case are very great, and I have not undertaken an exhaustive discussion of them. It has been the purpose of this memorandum merely to emphasize what has seemed to me to be of itself a fatal defect in the complainant's application for injunctive relief. It may be that a closer study of the covenant in the defendant's fundamental deed, Eldorado Realty Company to Blanch, and the covenant in the complainant's fundamental deed, Eldorado Realty Company to Schneider, would make plain an equally strong defence.